IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| **CHEYENNE RIVER SIOUX TRIBE,**<br><br>Plaintiff,<br><br>and<br><br>**ROSEBUD SIOUX TRIBE,**<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>**RYAN ZINKE, UNITED STATES SECRETARY OF THE INTERIOR, et. al.,**<br><br>Defendants. | Case No. 3:15-cv-3018-RAL |

**CHEYENNE RIVER SIOUX TRIBE'S SEPARATE
STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND ITS MOTION TO JOIN ROSEBUD
SIOUX TRIBE'S MOTION FOR SUMMARY JUDGMENT**

**I.   General Facts About the Cheyenne River Sioux Tribe.**

1. The Cheyenne River Sioux Tribe ("CRST" or "the Tribe") is a federally-recognized Indian tribe. 25 U.S.C. § 479a; 81 Fed. Reg. 5020 Jan. 29, 2016)

2. CRST governs the Cheyenne River Sioux Indian Reservation ("Reservation") in Dewey and Ziebach County, South Dakota. *South Dakota v. Ducheneaux*, No. 88-3049, 1990 WL 605077 (D.S.D. Aug. 21, 1990) at *2.

3. The Cheyenne River Sioux Tribe includes the Itazipco, Siha Sapa, Minniconjou, and Oohenumpa bands of the Great Sioux Nation. *Cheyenne River Sioux Tribe Equitable Compensation Act,* Pub. L. 106–511 (Nov. 13, 2000), 114 Stat 2365, § 103(1).

4. On the Cheyenne River Sioux Reservation there are two tribally controlled grant schools, Takini and Tiospaye Topa, and one BIE-operated school. (Affidavit of Dr. Cherie Farlee, para. 3)

## II.    Facts Related to Tribal Consultation.

5. Other Courts have held that the government's duty to consult on treaty rights is a binding obligation from flowing from treaties with Tribes and from the government's obligations as a fiduciary. *Klamath Tribes v. United States*, No. 96-381, 1996 WL 924509, at *8 (D. Or. Oct.2, 1996), (USFS action to sell tribal timber without consulting with the tribe violated its duty "to avoid adverse effects on treaty resources."); *Confederated Tribes and Bands of the Yakama Nation v. U.S. Department of Agriculture*, No. 10-3050, 2010 WL 3434091, at *4 (E.D. Wash. Aug.30, 2010) (USDA approval of landfill next to tribal lands without consulting violated Yakama Treaty of 1855 and federal common law); *Muckleshoot Indian Tribe v. Hall*, 698 F. Supp. 1504 (W.D. Wash. 1988) (preliminary injunction against federal government permit authorizing marina that interfered with treaty rights).

6. At any of the "consultations" that CRST has attended, BIE officials have simply told tribal officials what is going to happen. They are not really listening to concerns of the tribal leaders. (Affidavit of Dr. Cherie Farlee, para. 14)

## III.    Facts related to the Closure of the Education Line Office at Cheyenne River Agency

7. The Education Line Office (ELO) which serves the Cheyenne River Sioux Tribe no longer exists. We do not have a Line Officer who works on the Cheyenne River Sioux Reservation. The last employee left the office in December 2014. (Affidavit of Dr. Cherie Farlee, para. 4)

8. The only BIE employees left at Cheyenne River are maintenance and facility workers for the BIE-operated school. They cannot and do not perform any of the duties formerly provided by the Education Line Office. There was formerly a Tribal Infant/Toddler Program that was supervised by the Cheyenne River ELO, but that has been transferred to Minneapolis. (Affidavit of Dr. Cherie Farlee, para. 5)

9. I attended a meeting with BIE officials on August 13, 2014, in Eagle Butte, South Dakota. At the meeting, BIE representative Bart Stevens informed myself and other representatives from the Tribe that the Blueprint and Secretarial Order #3334 were being implemented. He further informed us that within days of the Secretarial Order being issued, he assumed oversight of BIE-operated schools, including the one on the Cheyenne River Sioux Reservation. He further told us that the two BIE grant schools on the Cheyenne River Reservation would now be reporting to Rosemarie Davis in Minneapolis. (Affidavit of Dr. Cherie Farlee, para. 6)

10. If we need something from the Bureau of Indian Education for the tribally controlled grant schools, we now have to call Rosemarie Davis in the Minneapolis, Minnesota area. (Affidavit of Dr. Cherie Farlee, para. 7)

11. As of December 31, 2015 - before Congress had approved the reprogramming of funds, Ms. Davis' title had become Associate Deputy Director – Tribally Controlled Schools. (Affidavit of Dr. Cherie Farlee, para. 8)

12. As far as I know, the equivalent of Rosemarie Davis for the Bureau-operated school on the Cheyenne River Sioux Reservation is currently Casey Sovo, and he is based out of Albuquerque. (Affidavit of Dr. Cherie Farlee, para. 9)

13. The lack of an Education Line Office and a Line Officer at Cheyenne River has harmed the educational services provided to the children of the Tribe. Specifically:

    a. There has been almost no technical assistance (TA) provided to the schools on Cheyenne River for over four years. The BIE says they are providing TA but none is

   being given to the Cheyenne River Schools. The only person that was providing some limited TA to the Cheyenne River schools was a person from the Rosebud ELO, but she retired and that office was also moved to Minneapolis.

   b. Fund distribution documents (FDD) and grant amendments are not being sent to the Tribe by the ADD East (now apparently called ADD Tribally Controlled Schools) from Minneapolis in a timely manner as they had prior to the reorganization. This is causing a great financial hardship on our schools. For example, Takini School's Emergency Funds were never put into a grant amendment, which caused the school to run completely out of money. This was an error on the part of the office in Minneapolis.

   c. The Indian Student Equalization Program (ISEP) certification, which is critical in determining each school's funding level each year, has been delayed two times for the schools on Cheyenne River because the Education Program Specialist who oversees this process is now located in Minneapolis and cannot come out to complete the review because her travel was not approved. (Affidavit of Dr. Cherie Farlee, para. 10)

14. None of the situations described in Paragraph #13 would have happened if the BIE had not closed the ELO at Cheyenne River and moved the office to Minneapolis. (Affidavit of Dr. Cherie Farlee, para. 11)

15. The Cheyenne River Sioux Tribe has never requested or agreed that an administrator position or an Education Resource Center should be located at Pine Ridge to serve Cheyenne River. Any assertions by the BIE otherwise are false. (Affidavit of Dr. Cherie Farlee, para. 12)

16. In all so-called "consultations" that the BIE has had with the Cheyenne River Sioux Tribe, the Tribe has opposed any movement or closure of its Education Line Office, for all the reasons previously discussed. The BIE is not considering that the ELO offices on each reservation were sensitive to each school's unique situation and could respond quickly and effectively. The restructuring that is happening is only making services at the local level worse, not better, and that is ultimately harming our students. (Affidavit of Dr. Cherie Farlee, para. 13)

Dated: February 12, 2018

                                      CHEYENNE RIVER SIOUX TRIBE,
                                      Plaintiff,

                          By:     /s/ Tracey A. Zephier
                              Tracey A. Zephier
                              FREDERICKS PEEBLES & MORGAN LLP
                              520 Kansas City Street, Suite 101
                              Rapid City, SD  57701
                              Telephone: (605) 791-1515
                              Facsimile:  (605) 791-1915
                              Email: tzephier@ndnlaw.com

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 12th day of February, 2018, a copy of the foregoing was filed electronically with the Clerk of the Court.  The electronic filing prompted automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

                                                    /s/ Tracey A. Zephier