## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## CENTRAL DIVISION

| | | |
|---|---|---|
| CHEYENNE RIVER SIOUX TRIBE, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: 3:15-cv-03018-KES |
| | ) | |
| ROSEBUD SIOUX TRIBE, | ) | **INTERVENOR-PLAINTIFF** |
| | ) | **ROSEBUD SIOUX TRIBE'S** |
| Intervenor-Plaintiff, | ) | **RESPONSE TO DEFENDANT** |
| | ) | **RYAN ZINKE, SECRETARY, ET AL.'S** |
| v. | ) | **STATEMENT OF MATERIAL FACTS** |
| | ) | |
| RYAN ZINKE, Secretary, United States | ) | |
| Department of Interior, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Rule 56.1, Intervenor-Plaintiff Rosebud Sioux Tribe hereby submit their response to the Statement of Material Facts filed by Defendant Ryan Zinke, Secretary, United States Department of Interior, *et al.* (ECF No. 89) with it Motion for Summary Judgment. Intervenor-Plaintiff will respond to each numbered paragraph of Defendant's Statement of Material Facts with a separately numbered response and appropriate citation to the record. Rosebud Sioux Tribe joins with Cheyenne River Sioux Tribe's Response to Defendant Ryan Zinke, Secretary, *et al.*'s Statement of Material Facts.

Intervenor-Plaintiff Rosebud Sioux Tribe may be referred to variously as "RST" or "Rosebud." Plaintiff Cheyenne River Sioux Tribe may be referred to variously as "CRST" or "Cheyenne River." Defendant United States Bureau of Indian Affairs shall be referred to as "BIA." Defendant United States Bureau of Indian Education shall be referred to as "BIE." Defendant United States Department of Interior, by and through its Secretary Ryan Zinke, shall be referred to variously as either "Interior" or "DOI."

1

## RESPONSES TO DEFENDANT'S STATEMENT OF
## UNDISPUTED MATERIAL FACTS

1.      Undisputed.

2.      Undisputed that the Study Group held listening sessions, but disputed that the Study Group held _six_ listening sessions.  The documents, including the Dear Tribal Leader letter and the notice in the Federal Register, show there were only _four_ listening sessions.  (CRST 00540 Federal Register Notice, 00542 "Dear Tribal Leader" letter. CRST-00543 was the erroneous reference, written by Wendy Greyeyes, in the Consultation Report mistakenly saying there were _six_ Listening Sessions.  Greyeyes was not at the Listening Sessions, and this is an error.) (See, also, Roessel Dep. 32:5-8.)

3.      Undisputed, that the Study Group visited some schools in 2013, but immaterial to issue of "adequate consultation," as these were not formal "Listening Sessions," or consultations. These visits were more akin to political visits and casual conversations.

4.      The cited document speaks for itself, but it is undisputed the document states what is summarized in this paragraph.

5.      It is undisputed that a draft report was prepared by the Study Group, but disputed that it was _based_ on "the input it had received."  The draft report largely contained the work of non-tribal consultants who sprinkled their work with a few comments by tribal participants. (SMF 26).  There were a large number of tribal comments not included in the draft report.  Those which fit with the Study Group's plan was included.

6.      Undisputed that there were four "Listening Sessions" held in April and May of 2014, not "consultations," but a review of the Loneman School Listening Session does not show any discussion of the "Draft Blueprint," nor does anyone at the Loneman Session in April 2014

remember such a draft being distributed there.  There is a reference to a blueprint elementary and secondary education reform in 2011, but this is 3 years prior, and <u>not</u> the same as the draft Blueprint for Reform. (CRST 879-1176)

7.      Undisputed that the four Listening Sessions were noticed in the Federal Register, but disputed they were "consultations," by admission of BIE Director Roessel. (Roessel Dep. 19:24-20:12.)

8.      Undisputed that the Rosebud Sioux Tribe and Cheyenne River Sioux Tribe attended the Loneman Listening Sessions but it was a general Listening Session at which reorganization, other educational issues was discussed, including adequate funding and treaty rights to education.

9.      Undisputed.

10.     Undisputed, to the extent the Study Group incorporated *some* feedback from the Listening Sessions, but omitted others which were not in conformity with the Study Group's preconceived ideas.

11.     Disputed.  The Secretarial Order 3334 was prepared *before* the Study Group's Final Report (Yu Dep. 232:10-233:6).

12.     Undisputed that Roessel made speeches at the two GPTCA meetings referenced.

13.     Disputed.  The BIE held four Listening Sessions <u>before</u> the final Blueprint for Reform was issued and four tribal consultations in April and May of 2015, after the Blueprint for Reform (reorganization proposal) was issued.  The remaining contacts, if any, were just that-contacts to establish a record of such to appease Congress.

14.     Disputed to the extent it suggests the BIE provided staffing detail or budgeting detail. The charts were general, and lacking detail, as already noted by this Court.

15.     Unknown by Rosebud Sioux Tribe.

16.     Undisputed that an informal slide show was presented to some tribal members and officials by Wendy Greyeyes, followed by discussion.  This was informal and was not recorded, nor did the tribal chairman attend.

17.     Undisputed, in context of Plaintiff Rosebud's response to No. 16 above.

18.     Disputed.  Defendant only held four Tribal consultations.  Webinars were not considered consultation.  Roessel Dep. 172:23-25; 96:18-25, CRST-2400, RST SMF para. 55.

19.     Undisputed.

20.     Disputed.  BIE Chief Implementation Officer Wendy Greyeyes testified that it was made available the day of the Ramkota consultation and (RST SMF para. 76.)  CRST 2435 is an email dated April 21, 2015, sent *one day before* the Ramkota consultation.  This was inadequate time for the tribes to consult experts or prepare meaningful questions or responses.

21.     Undisputed to the extent that there were discussions and comments, but disputed that BIE "listened to comments."  See for example, Roessel and Greyeyes exchange in (RST Exhibit 28) after Patti Busch read statement of Sicangu Owayawa Oti.

22.     Undisputed, but dispute those comments were given effect by BIE and Study Group.

23.     Rosebud does not have information to dispute or not to dispute, defer to CRST.

24.     Rosebud does not have information to dispute or not to dispute but citations are not correct, defer to CRST.

25.     Disputed only to extent that not all comments, including some very substantial tribal comments, were in the Summary Tribal Consultation, and not all of the included tribal comments, including some by Rosebud were responded to by BIE. (See Brief.)

4

26.     Disputed.  First, the citation is inaccurate.  This cite was testimony about Lakota songs.  Plaintiffs believe the intended cite is at CRST-001109, p. 231 of Loneman Transcript.  There, Ms. Bordeaux, who was <u>not</u> a tribal representative at the time, only suggested that if Navajo could get its own ADD, why couldn't the Dakotas?  There was <u>no</u> reference at all to ADD's by function, and the idea for ADDs by function could not have come from these comments at Loneman.

27.     Rosebud cannot dispute or not dispute, but defers to CRST.

28.     Disputed.  The idea to place an ERC in Kyle happened <u>before</u> the April 22, 2015 consultation.  CRST-2502:192:20-23, RST SMF para. 112.  At the April 22, 2015 consultation, Roessel asked Greyeyes where the new location was, as he thought it was in Eagle Butte, and she confirmed it had been changed to Pine Ridge. CRST 2454 at p. 192 (Ramkota Transcripts.)  This is evidence that the decision predated the April 22, 2015 consultation.  There is no other record of such a consultation, regarding moving the location to Kyle, in the Administrative Record.  Importantly,  Rosebud was not consulted at all.  (Affidavit of Deb Bordeaux at para. 11, Exhibit 6, e-mail of Richard Lunderman.**)**

29.     Object as not a material fact regarding issues in smeary judgment, subject to objection Rosebud could not and would not speak for Great Plains tribes.  (RST along with the other Great Plains Tribes wanted the Education Line Offices to remain open and fully staffed on their reservations.  RST SMF para. 99,102, 108, and 109.)

30.     Object as immaterial to issues in summary judgment.  Subject to objection, Deb Bordeaux testified she was unaware of ongoing notice such stakeholder calls as the Rosebud Rule 30(b)(6) representative. Therefore, as to Rosebud, cannot confirm or deny these calls occurred.

(Bordeaux Dep. Vol. II 39:7-40:4) However, disputed to extent such calls were <u>not</u> consultations under federal law or policy.

31.     Object as immaterial to issues in this summary judgment and that the word "multiple" is vague, but undisputed that the BIE hosted at least one "Webinar," but by BIE's admission, Webinars are not consultation. (SMF. 55.)

32.     Cannot dispute or not dispute, but defer to CRST.

33.     Undisputed.

34.     Undisputed.

35.     Disputed.  Deborah Bordeaux and Harold Frazier both testified that about the lack of technical assistance around the time that the EGOS closed.  Bordeaux Dep. Vol. II 77:24-78:15, Frazier Dep. 87:2-88:9.  This has persisted in the form of diminished support and technical assistant up to the present. (Rosebud SMF 211.)

36.     Object, immaterial to issues in summary judgment, but subject to objection, Rosebud cannot dispute or not dispute, defer to CRST.

37.     Object, immaterial to issues in summary judgment as to adequacy of consultation and violation of Administrative Procedures Act.  Subject to objection, undisputed.

38.     Dispute.  There is no evidence in the Administrative Record regarding this, and only deposition testimony by Roessel asserting this, unsupported from any other sources.  Plaintiffs could not find any source for this in Congressional records, and in fact circumstantial evidence shows the opposite - that Interior told Roessel to call them "sovereignty *enhancement* grants" to get around fact of Congressional appropriation of "education enhancement funds."

39.     Undisputed.

40.     Undisputed.

41.     Undisputed.

42.     Disputed to extent that record speaks for itself.  House Appropriations put a condition to that effect in a December 18, 2015 letter, but no such conditions exist in written form from Senate Appropriations Committee side.  Other than Roessel's testimony, in his deposition no other evidence in Administrative Record support the assertion of what BIE did or didn't do in response to the letter of December 18, 2015.

43.     Undisputed, as to the language of the letter at CRST- 004116.  Disputed as to the use of the word "Congress" as opposed to the "House Appropriations Committee." (CRST 004116.)  To knowledge of Plaintiffs, no such condition has been issued in writing from the Senate Appropriations Committee.

44.     It is undisputed the ERC are not staffed, and that education support and technical assistance are being carried out in a diminished way by the Minneapolis ADD for Tribally Controlled Schools and subsidiary staff located on or near some reservations.  Other than the deposition of Roessel as a citation, there is no evidence in Administrative Record, just the recent Declaration of the new BIE Director Tony Darman, in litigation.

Dated this 2nd  day of April, 2018.

/s/ Charles Abourezk
Charles Abourezk
Abourezk, Zephier & LaFleur, P.C.
Attorney for Rosebud Sioux Tribe
P.O. Box 9460
Rapid City, South Dakota 57709
(605) 342-0097
Fax (605) 342-5170

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing *Intervenor-Plaintiff Rosebud Sioux Tribe's Response to Defendant Ryan Zinke, Secretary, et al.'s Statement of Material Facts* was served via e-filing, upon the following person(s):

Tracey Zephier
Fredericks, Peebles & Morgan, LLP
520 Kansas City Street, Ste 101
Rapid City, SD 57701

Attorney for Plaintiff Cheyenne River Sioux Tribe

Kevin Snell, Trial Attorney
Daniel Bensing, Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 6108
Washington, SD 20530

Attorneys for Defendants

this 2nd day of April, 2018.

      /s/ Charles Abourezk